UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| BENJAMIN CAVINESS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:15-CV-422-JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

In this case, plaintiff Benjamin Caviness, by counsel, appeals the denial of his claim for Social Security Disability Insurance Benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND

**A. Procedural Background**

Caviness sought disability insurance benefits on July 21, 2014, alleging an onset date of April 1, 2007. (Tr. 253-61). Caviness indicated that he was unable to work due to back pain, anxiety, depression, and post-traumatic stress disorder ("PTSD"). (Tr. 269-94). Because Caviness remained insured through December 31, 2012, he had to establish disability on or before that date in order to be entitled to the benefits he sought. But his application was denied initially and on reconsideration. (Tr. 188, 195). An Administrative Law Judge ("ALJ") held a hearing on March 30, 2015, during which Caviness appeared with counsel and testified, along with a vocational expert ("VE") who testified. (Tr. 129-81). On April 21, 2015, the ALJ decided that even though Caviness suffered from the severe impairments of degenerative disc disease,

obesity, depression, anxiety, and PTSD, he could still perform light work that was limited (in relevant part) to simple routine tasks that were not performed at a production rate pace and involved no more than occasional changes in the work setting. (Tr. 111-22). The ALJ did not impose any further mental or social restrictions, such as limiting the amount of interaction with coworkers, supervisors, or the public. The hypotheticals posed to the VE considered the same limitations (which were ultimately contained in Caviness' assigned residual functional capacity ("RFC")[1]), and the VE testified that such a restricted individual could still perform work as an office helper, mail clerk, house cleaner, order clerk, charge account clerk, and information clerk. Thus, the ALJ determined that Caviness was not disabled through December 31, 2012, since he could perform these other jobs.

On July 17, 2015, the Appeals Council denied Caviness' request for review of the ALJ's decision, stating that "[w]e found no reason under our rules to review the Administrative Law Judge's decision." (Tr. 1). The Appeals Council wrote:

> We also looked at the following materials that you submitted to us (1) medical records of the VA Hospital dated from January 2, 2015 to January 15, 2015 (3 pages), (2) a VA Benefits Decision dated May 12, 2015 adjusting your disability rating effective May 15, 2014 (7 pages), (3) a VA Benefits Summary dated May 14, 2015 (3 pages), and (4) medical records of VAMC Marion dated from February 14, 2015 to May 14, 2015 (79 pages). The Administrative Law Judge decided your case through December 31, 2012, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(Tr. 2). Caviness filed a timely complaint seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Caviness specifically contends that a remand for further proceedings is necessary because the Commissioner erred as a

---

[1] RFC is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

2

matter of law in denying Caviness' claim when the Appeals Council did not apply its regulation properly in considering "new" and "material" evidence which revealed that Caviness was further limited in his mental and social ability to perform other work. Caviness further suggests that the Commissioner's decision is ultimately not based on substantial evidence.

   **B. Medical Background**

Caviness was born on March 6, 1978, and is currently 39 years old. (Tr. 269). Caviness was enlisted in the Army for four years as a patient administrative specialist (taking care of the paperwork for births, deaths, and air evacs), until he injured his back when a large steel desk fell and trapped him on the floor. (Tr. 142, 168). Following his service overseas, he was basically unable to maintain regular employment due to the physical and mental demands of regular work. But because Caviness does not challenge the ALJ's assessment of his physical limitations, the Court turns to his documented mental limitations.

During the administrative hearing, the ALJ questioned Caviness about why he felt he could not work, referring to the period before December 2012. Caviness responded that his "physical disabilities aside," his anxiety caused great limitations. (Tr. 149-50). Caviness discussed his hypervigilance and noted that he was "freaked out" by having to appear at the disability hearing because there was only one way in and one way out of the building. (Tr. 150). He testified that his constant pain and other physical ailments caused him to be mean and the thought of dealing with people gave him anxiety. (Tr. 150-51). After the ALJ noted the record's supporting diagnoses for anxiety and depression, with PTSD "definitely [being] mentioned in the record throughout the years," the ALJ asked Caviness to discuss how his mental problems affected him on a daily basis. (Tr. 158). At that point, Caviness explained how he conducts perimeter checks of his house and is constantly on the lookout for threats and exits. (Tr. 158-60).

Caviness referenced having nightmares, even with the help of medication, and noted that his sleep suffered as a result. *Id*. Caviness also noted having issues with his concentration, as well as anxiety attacks on a daily basis caused by his fear of situational events. (Tr. 161). It was Caviness' opinion that his anxiety, depression, and PTSD were all "tied in together." (Tr. 159).

Caviness' mental health treatment records indicate that in July 2009 he requested mental health counseling after experiencing dreams and flashbacks from his military tour. (Tr. 557-59). On September 23, 2009, Caviness presented to Dr. Sarah Higley for a psychological consult, specifically for a PTSD screening and comprehensive psychiatric evaluation. (Tr. 546-56). Caviness relayed high levels of stress and flashbacks to his tour of duty. *Id*. On mental exam, Dr. Higley noted no abnormalities and indicated that although Caviness was referred for an evaluation due to reported symptoms of PTSD, when evaluated, Caviness was unable to provide details about specific military-related incidents that were distressing and he did not report any symptoms consistent with PTSD. *Id*. Dr. Higley diagnosed unspecified adjustment disorder and cannabis abuse. *Id*. Again, in November 2009, January, March, April, and October 2010, Caviness presented with reports of stress, but noted that it was mostly attributed to situational factors. (Tr. 520-44). No new clinical findings or diagnoses were noted. *Id*.

Just after his date last insured, Caviness sought treatment again in early 2013 with complaints of PTSD. (Tr. 450-53, 458). During a psychiatric evaluation performed by Dr. Echo Arnett, Caviness complained of volatile mood and poor sleep. *Id*. On exam, Dr. Arnett noted Caviness as having poor insight and judgment, behavioral control issues, inability to tolerate criticism, and impulsiveness. *Id*. Dr. Arnett diagnosed Caviness with anxiety disorder NOS, depressive disorder NOS, and personality disorder NOS with narcissistic/borderline features. *Id*.

Despite inclusion in Caviness' administrative medical record, the ALJ did not discuss the following medical records concerning Caviness' ongoing mental problems:

Mainly, on August 8, 2013, Caviness presented to Jonathan Graber, NP, for an updated comprehensive psychiatric exam, including medication review and supportive therapy. (Tr. 439-41). Caviness reported being irritable and short tempered, as well as experiencing feelings of hopelessness and depression, panic attacks, visual hallucinations of dead babies, poor motivation, flashbacks, and changing appetite. *Id*. It was noted that Caviness was "looking for medications for anxiety and depression" and that he had "been hesitant to try to get help in the past." *Id*. Mr. Graber diagnosed Caviness with depression NOS, anxiety NOS, and personality disorder, and documented that Caviness displayed "noticeable sadness and is frustrated by his inability to manage relationships." *Id*.

On August 5, 2014, Caviness presented to Dr. Arnett for individual psychotherapy. (Tr. 656-57). On exam, Dr. Arnett recorded that Caviness appeared to be in pain and had limited insight and poor judgment. *Id*. Dr. Arnett noted Caviness as having a poor prognosis because he did not appear interested in changing and did not appear to be an accurate reporter of his problems. *Id*.

On August 11, 2014, Caviness presented to Dr. Bradford Eaton, a psychologist, complaining of living in constant pain which eroded his quality of life. (Tr. 645-48). Dr. Eaton inquired about his functional limitations, to which Caviness responded that his pain had cost him his marriage and he couldn't work or do anything because of his constant pain. Caviness was described as having an extremely pessimistic outlook on his life. Dr. Eaton referred Caviness to Dr. Kartan, a psychiatrist, for medication assessment and management.

That same day, Caviness presented to Dr. Kartan complaining of feeling down and hopeless, along with experiencing loss of appetite, nightmares, and anxiety with panic attacks. *Id*. On examination, Dr. Kartan noted that Caviness was irritable and limping due to back pain. He further recorded Caviness as having a depressed and anxious mood, blunt affect, and poor insight/judgment. *Id*. Dr. Kartan diagnosed Caviness with depressive disorder NOS, anxiety disorder NOS, and personality disorder. Dr. Kartan noted that Caviness had "not taken psychiatric medications as he did not want anyone to know" and so he had previously tried to internalize his problems. *Id*. Dr. Kartan prescribed Caviness Prozac, Clonazepam, and Trazodone. *Id*. In addition, an order for a standard cane and back support were placed. (Tr. 655).

Caviness returned to Dr. Kartan on October 14, 2014, complaining of insomnia, nightmares, panic attacks, and back pain, noting that the medications were only helping some. (Tr. 741-42). On exam, Dr. Kartan reported Caviness as being anxious with a depressed mood and having poor insight and judgment. *Id*. He started Caviness on Ambien, increased his Prozac dose, and continued him on Trazodone and Clonazepam. *Id*.

On March 17, 2015, it was noted that Caviness' VA benefits for diagnoses of PTSD and depression were "pending results of a VA medical examination." (Tr. 745).

Caviness met with Dr. Joseph Bolton for a psychiatric examination on April 9, 2015 (which was after the March 30th hearing with the ALJ, but before the ALJ's denial of benefits on April 21st). (Tr. 51-69).[2] Dr. Bolton concluded that Caviness suffered from PTSD and adjustment disorder with mixed anxiety and depressed mood. *Id*. It was determined that Caviness had "occupational and social impairment with reduced reliability and productivity." *Id*. The examiner documented, among other things, that Caviness demonstrated irritable behavior and

---

[2] These records were submitted to the Appeals Council for review.

angry outbursts, problems with concentration, and moderate-to-severe psychomotor agitation. Caviness was later assessed with a 70 percent VA disability rating for his mental impairments retroactive to May 15, 2014.

## II. DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other

7

work in society at step five. 20 C.F.R. § 404.1520(e).  The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007).  Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).  The Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003).  The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.*  The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001).  The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.*  Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

In this case, the issues raised are whether the Commissioner erred as a matter of law by not properly applying its own regulation concerning "new" and "material" evidence, and whether the Commissioner's decision was based on substantial evidence with respect to Caviness' mental limitations.

### III.    ANALYSIS

Evidence submitted to the Appeals Council is evaluated only if it is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970. If the new evidence meets these criteria, the Appeals Council must incorporate that evidence into the record and evaluate the entire record, including the new and material evidence. *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). However, the Council will only grant *de novo* review of the ALJ's decision if it determines, based on the supplemented record, that the ALJ's conclusions are "contrary to the weight of the evidence." *Id*.

On appeal to the district court, the status of the new evidence and the scope of the Court's review of the Appeals Council's denial depends upon the grounds given by the Appeals Council. *See Stepp*, 795 F.3d at 722. If the Appeals Council denies review because new evidence is non-qualifying under the regulations, the Court conducts a *de novo* review of whether the evidence was relevant under the regulations. *Id*. at 722-25. If the Court finds that the evidence is new, material, and time-relevant, an error of law exists and remand may be appropriate. *Id*. (citing *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012)). Conversely, if the Appeals Council found the new evidence was relevant under the regulatory criteria but denied review because the ALJ's decision was not contrary to the weight of the evidence, then the Council's decision not to engage in plenary review is discretionary and unreviewable. *Id*. (citing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997)).

After the ALJ rendered his decision denying Caviness' claim for disability insurance benefits, Caviness submitted additional VA records. The Appeals Council denied Caviness' request for review, noting that under its rules it would have reviewed Caviness' case if it had received "new and material evidence and the decision is contrary to the weight of all the evidence." (Tr. 1). The Appeals Council also wrote:

> We also looked at the following [VA] materials that you submitted to us . . . The Administrative Law Judge decided your case through December 31, 2012, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(Tr. 2). Thus, the Appeals Council clearly denoted Caviness' supplemental VA medical records as "new information," but then outright rejected it as not time relevant, and therefore, immaterial. Although it is true that the Appeals Council specifically identified Caviness' supplemental VA records by name, date, and page number, consistent with HALLEX I-3-5-20,[3] even the Commissioner concedes that "the language used in the Appeals Council notice regarding its determination that review was not warranted [in Caviness' case] appears to be similar to that at issue in *Stepp*" [DE 19 at 4-5]. In *Stepp*, the Seventh Circuit concluded that where the Council's order was insufficient to determine with any confidence that the Council accepted the information as "new and material" evidence, then interpreting the Council's order as rejecting the evidence as non-qualifying under the regulation is proper. *Stepp*, 795 F.3d at 725. Ultimately, whether the Appeals Council clearly deemed the information non-qualifying because it was about a "later time" (as the Court sees it), or the order's language fails to unambiguously demonstrate that the Appeals Council accepted the notes as "new and material" under the

---

[3] HALLEX I-3-5-20 demands that the language in the denial notice specifically identify the evidence by source, date range, and number of pages.

10

regulation (as the Commissioner suggests), the decision is reviewable. *See Stepp*, 795 F.3d at 722-25. Accordingly, the undersigned proceeds to review *de novo* whether the Appeals Council erroneously concluded that the new evidence was not material, which is the only issue contested by the defense.

Evidence is material if, under § 404.970(b), it creates a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725 (citing *Perkins*, 107 F.3d at 1296). Here, for the reasons explained below, there is a reasonable probability that the new evidence would have altered the ALJ's decision concerning the imposition of further social and mental restrictions in the RFC.

As in *Stepp*, the evidence at issue in this case is material because it reflects the trajectory of Caviness' psychological impairments and provides evidence of further limitations that the ALJ erroneously thought didn't exist. In his decision, the ALJ specifically concluded that "no treating or examining physician ha[d] found the claimant to be . . . limited to an extent greater than" the RFC determination made. (Tr. 119). The ALJ also noted that previous PTSD screenings had all been negative, Caviness was not demonstrating symptoms consistent with PTSD in 2010, and his treatment was minimal in nature during the relevant period. (Tr. 117-20). However, less than two weeks before the ALJ rendered his decision, an examining VA doctor confirmed Caviness' mental diagnosis for PTSD. In addition, the doctor specifically referred to Caviness as having angry outbursts, problems with concentration, and "occupational and social impairment with reduced reliability and productivity." It was also noted that Caviness had difficulty establishing and maintaining effective work and social relationships, and adapting to stressful circumstances, including work. These findings directly undermine the ALJ's conclusions concerning the lack of evidentiary support for Caviness' suffering from the

11

limitations of PTSD. And while the Court recognizes that the new VA evidence was about a time after Caviness' date last insured, the Court finds with a reasonable probability that additional mental RFC limitations would have been imposed had the ALJ not discounted Caviness' allegations of significant social limitations because no diagnosis of PTSD was ever received. In addition, the ALJ could no longer rely on the fact that no functional restrictions were identified in the medical records. In fact, the new VA records implicitly reference some period of time before 2015, given the doctor's conclusion that Caviness has been *unable to maintain* effective work and social relationships. In short, the new VA evidence filled the evidentiary gap that concerned the ALJ and showed a progression of Caviness' mental problems which undeniably existed prior to his date last insured.

The Court is also unable to conclude that the ALJ's determination was supported by substantial evidence where the ALJ wholly ignored Caviness' 2013 and 2014 mental health records. These records indicated that Caviness internalized his problems and had previously hesitated to seek psychiatric treatment because he didn't want others to know about his mental illness.[4] These same records also demonstrated that Caviness was receiving increased doses of various psychiatric medications to help with his depression, anxiety, and PTSD because his symptoms were not alleviated. Accordingly, it was imperative for the ALJ to consider all of these records which reveal a worsening of Caviness' mental problems since 2009.

---

[4] The ALJ discounted the extent of Caviness' impairments in part because he received minimal treatment during the relevant period. However, SSR 16-3p indicates that if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, the adjudicator will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he did not seek treatment.

12

Also problematic is the fact that the ALJ rated Caviness' mental functional limitations without the benefit of any medical professional having opined on how Caviness' various mental impairments affected Caviness' functional capacity for employment. While it is true that Caviness bears the burden of proving that he is disabled, the need for additional evidence about the limiting effects of Caviness' mental issues was apparent given the ALJ's repeated reference to the fact that "no specific functional limitations" or "restrictions" were identified in the various medical records. (Tr. 118-19). Again, some of those functional limitations were generally noted by the new VA evidence. And since the ALJ's real concern was the lack of support for specific functional work-related limitations or restrictions, *see* 20 C.F.R. § 404.1520a(e), the ALJ had a mechanism to rectify the problem. *See* SSR 96–2p (noting that the ALJ or the Appeals Council may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify). Given the concerns expressed by the ALJ, a medical professional should have been requested to opine on how Caviness' well-documented mental impairments—several of which were deemed "severe" by the ALJ—affected his functional capacity for employment during the insured period. *See*, *e.g*., *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Richards v. Astrue*, 370 F. App'x 727, 730-31 (7th Cir. 2010) (noting that the need for additional evidence about the limiting effects of claimant's depression and anxiety were apparent, and in the absence of any expert foundation for the functional ratings the court was unable to discern the logical bridge from the evidence to the conclusions).

As a result, the Court remands this case for further evaluation of Caviness' RFC in light of the new and material information presented concerning Caviness' mental illness, and so the RFC may ultimately be supported by substantial evidence. Ultimately, without a proper RFC evaluation, steps four and five cannot be properly assessed. *See Young*, 362 F.3d at 1000 (the

ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC usually skews questions posed to the VE); 20 C.F.R. §§ 404.1520, 404.1545. In other words, given the unsupported reasoning regarding the ALJ's RFC determination, the Court is unable to determine whether the questions posed to the VE were adequate and inclusive of Caviness' actual limitations, and whether the VE's testimony adequately established that Caviness could perform other work.[5] *See Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) (confirming that the ALJ must provide vocational experts with a "complete picture of a claimant's residual functional capacity.").

## IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: March 31, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[5] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Caviness' medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, rather than on the record itself or the limitations of the claimant himself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).